IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KATERRY SLOAN,<br><br>    Plaintiff,<br><br>v.<br><br>CORECARE BEHAVIORAL HEALTH MANAGEMENT, INC. and CORECARE SYSTEMS, INC., together doing business as "Kirkbride Center"<br><br>    Defendants. | Case No. 2:22-cv-04703<br><br><br>JURY TRIAL DEMANDED |

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS'
PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

NOW COMES Plaintiff Katerry Sloan, by and through her attorney, David Manes, Esq. of Manes & Narahari LLC, and files the following Brief in Opposition to Defendants' Proposed Findings of Fact and Conclusions of Law.

Plaintiff will not needlessly repeat the arguments already made in her initial Proposed Findings of Fact and Conclusions of Law as well as in the accompanying Brief in Support. However, one key part of Defendants' proposal must be addressed, where Defendants assert:

> Although attorney Moreland testified that she "believed" that she had authorization from Fleming to settle the case for $100,000, she struggled to answer whether she had ever discussed settling for $100,000 with Fleming (Docket No. 22, pg 5).

That is a mischaracterization of Moreland's testimony from the Evidentiary Hearing conducted on February 7, 2023 before this Court. Attorney Moreland testified under oath multiple times that she

had express authority from Defendants to settle for $100,000. That settlement authority, according to Moreland, was discussed the day before mediation and during the mediation:

> Q So again whenever you -- whenever you use this phrase $100,000 take or leave it you're describing an offer from you, from the defendants to the plaintiff; right?
> A Correct.
> Q Okay. And that's the same language that you used in the prior email to Mr. Fleming?
> A It is. And it's a reflection of our discussions the day before the mediation and during the mediation. (T. 35)

Moreland could hardly have been more explicit as she repeatedly described how her authority at $100,000 was discussed with Fleming on the day of mediation:

> Q Okay. Did you use the 100,000 amount?
> A We talked about settling for $100,000 and that would be the ceiling for the day based on the SIR and the authority that I had from RSCI.
> Q And you talked about that with Mr. Fleming on the day of mediation?
> A Yes.
> Q Before he dropped off the call?
> A Yes. (T. 46)

She testified clearly and confidently that she knew all along in the process that her maximum settlement authority from her clients was $100,000:

> Q And by that did you mean it would be take it or leave it at 100k as an offer from the defendants to the plaintiff?
> A That would be our ceiling and it was take or leave it.
> Q Because that was your understanding that was the maximum authority you had from your clients?
> A That was the authority that I had. (T. 34)

When asked directly by Plaintiff's counsel whether she had express authority at $100,000, Moreland confirmed that:

> Q And whenever you indicated that acceptance did you have express authority from your clients to settle the case for $100,000?
> A I believe I had my client's authority to settle the case for $100,000. (T. 36-37)

In fact, Defendants' counsel attempted at the Evidentiary Hearing to get Moreland to agree with their version of the story that the $100,000 number had never been specifically discussed or approved, but Moreland firmly rejected that in her testimony:

> Q And you say settle for $100,000; does that refresh your recollection that you had not talked to him about offering $100,000 before he dropped off the Zoom call?
> A That is not correct.  We talked about what my authority was. He -- Chris expressed to me that outside of the company's retention if the insurance company wanted to put extra towards the settlement that that was fine. That they, I think he said didn't care and I was very clear that the extent of my authority from RSCI was $25,000 and if it could get settled at 100 we would settle at 100 we would settle, if not it would not get settled. (T. 45)

Despite the fact that Moreland rejected their version of events under oath, Defendants' Proposed Findings of Fact and Law once again mischaracterizes her testimony by claiming that "she struggled to answer whether she had ever discussed settling for $100,000 with Fleming." That is simply false.

Therefore, Plaintiff Katerry Sloan respectfully requests that the Court find the Memorandum of Understanding enforceable.

Respectfully Submitted,

/s/ David Manes
PA ID: 314661
**MANES & NARAHARI LLC**
301 Grant St, Suite 270
Pittsburgh, PA 15219
(412) 626-5570 Direct
dm@manesnarahari.com