IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KATERRY SLOAN,<br><br>  Plaintiff,<br><br>vs.<br><br>CORECARE BEHAVIORAL HEALTH MANAGEMENT, INC. and CORECARE SYSTEMS, INC., together doing business as "Kirkbride Center",<br><br>  Defendants. | No. 2-22-CV-04703 |

**DEFENDANTS' REPLY BRIEF**

Defendants hereby reply to the points made in Plaintiff's Brief in Support of Proposed Findings of Fact and Conclusions of Law ("Plaintiff's Brief)." Plaintiff's Brief argues that six separate points "indicate that Moreland had express authority" to settle this matter pursuant to the terms set forth contained in the MOU prepared by Mediator Cimini and revised by attorney Morland. (Brief at 2-6). None of the six points raised in Plaintiff's Brief either establish or support the argument that Defendants ever gave attorney Moreland express authority to settle the case on the terms set forth in the MOU. At best, the evidence presented at the evidentiary hearing support Moreland's subjective "belief" that she had such authority. Moreland's subjective "belief" is simply not enough to satisfy Plaintiff's burden of establishing that Defendants actually provided her with that express authority.

Plaintiff concedes as she must that Moreland was required to "have express authority in order to bind a client to a settlement agreement." (Plaintiff's Proposed Conclusion of Law No. 4) "Express authority" is "authority given to the agent by explicit agreement, either orally or in writing." BLACK'S LAW DICTIONARY 143 (8th ed. 2004). It is undisputed that there was never

any written grant of express authority by Defendants to Moreland.  Plaintiff therefore has asked this Court to infer from alleged oral discussion between Moreland and Defendants representative Fleming that he "explicitly" agreed that she was authorized to offer and accept a settlement agreement in the amount of $100,000.  The evidence relied upon in Plaintiff's Brief fails to support any such inference.

First, Plaintiff argues that because Moreland was no rookie litigator, her testimony "indicates" that she had express authority. (Plaintiff's Brief at 5)  Translated, Plaintiff is really arguing that Moreland's subjective belief that she had express authority should suffice because of her years of experience. However, an insurance defense attorney with 24 years' experience should have known enough to confirm in writing any authority that was given to her by a client that insurer RSUI, her real client-in-interest, had appointed her to represent, had given her.  Here, it is undisputed that Moreland never confirmed any settlement authority in writing – either before the mediation or contemporaneous with informing Fleming of the purported $100,000 settlement.

Plaintiff's Brief also argues that Moreland had no ""also has no plausible motive to go beyond her authority . . ." (Brief at 3)  On the contrary, Moreland's plausible motive was to satisfy insurer RSUI, her real client-in-interest, who had given her authority to settle the case for up to $100,000.  Unlike RSUI, who would surely provide Moreland and her firm with repeat business, Defendants here were a "one off" client.  As between the two, Moreland certainly would plausibly want to have kept RSUI happy.  Moreland's email to Fleming acknowledged that $100,000 was more than he wanted to pay to settle the case.  Moreland's years of experience, the absence of any written confirmation of a grant of express authority for $100,000, and her plausible motive to keep her insurer client happy all support the conclusion that she had not obtained explicit authority from Defendants to settle for $100,000.

Second, Plaintiff argues that Moreland's email acceptance of Mediator Cimini's email somehow indicates that Moreland had express authority. (Plaintiff's Brief at 3) On the contrary, Moreland's confirmation of acceptance on behalf of she and her clients was a blatant misrepresentation. It is undisputed that after receiving Mediator Cimini's email asking her to review the MOU with her client, Moreland had not discussed the $100,000 settlement with Fleming, had not reviewed or discussed the MOU with Fleming, and had not confirmed any acceptance with Fleming. There is nothing about Moreland's response to Mediator Cimini that indicates or supports the explicit granting of express authority by Defendants.

Third, Plaintiff argues that RSUI representative Hennelly's testimony indicated Moreland had express authority (Plaintiff's Brief at 4). Again, Plaintiff's argument fails. Hennelly's testimony and settlement authority supplied by insurer RSUI cannot substitute of that of Defendants. That the insurer RSUI would be happy with a $100,000 settlement is wholly irrelevant to the issue of whether Fleming ever gave Moreland express authority to settle for that amount. Similarly, Hennelly's testimony that there was no indication at any time prior to the mediation that Defendants did not agree to the $100,000 settlement number sheds no light on the key issue of whether Defendants actually provided any such authority.

Plaintiff next argues that Mediator Cimini's testimony indicates that Moreland had express authority. (Plaintiff's Brief at 4) To the contrary, Cimini testified repeatedly that she had no recollection of whether Fleming ever authorized attorney Moreland to offer $100,000 on behalf of Defendants to settle this case and had no recollection of the events of the day of the Mediation. (N.T., 18:7-12)

Plaintiff then curiously claims that Fleming's own testimony indicated Moreland had express authority and that he had somehow "changed his mind" about settlement. (Brief at 5)

3

Again, contrary to Plaintiff's argument, Fleming was unequivocal that he never authorized a settlement offer of $100,000 so there was nothing to change his mind about.

Finally, Plaintiff argues that the course of settlement negotiations indicated that Moreland had express authority. (Plaintiff's Brief at 6)  Again, the course of settlement negotiations indicates the exact opposite - that Fleming had not given Moreland any blanket authority up to a particular amount.

Moreland agreed in her testimony that with each offer and counteroffer at the mediation, she would check with Fleming and obtain his express authority to make an offer on behalf of Defendants.  (N.T., 39:6-11; 40:13 - 41:2)  If Fleming had, as Moreland suggested, given him blanket authority up to the full amount of Defendants' SIR, there would have been no need or purpose to be checking with Fleming about each offer and counteroffer or to obtain his express authority at the mediation.

Moreland agreed that after Fleming had left the Mediation, she proposed "a bracket of $80,000 to $100,000." (N.T., 31:18-24) It was only after Fleming had left the Mediation and she had proposed this bracket of $80,000 - $100,000 that Plaintiff made a final offer of $120,000. (N.T., 33:4-9)  At that point, Moreland offered $100,000 as a final "take it or leave it" offer. (N.T., 33:10-17) After Fleming left the Mediation and Moreland proposed bracketing, Moreland conceded that she did not confer with Fleming during the bracketing process. (N.T., 41:25 - 42:10)

Moreland also conceded that after she sent Fleming an email at 2:17 pm informing him of the details of the settlement and asking Fleming to confirm that the settlement terms were agreeable, she never received any confirmation from Fleming agreeing to those terms.  (N.T., 45:6-12, 47:10 - 49:7)  She never claimed in her email, as she later did in her testimony, that Fleming had already given her express authority to offer $100,000.  Indeed, if she already had the authority

4

to settle the case on the terms stated in the MOU, why would she be seeking confirmation from Fleming that the terms were agreeable.  The reason is simple and straightforward: the only express settlement authority she had was given to her by the insurer RSUI, not Fleming, and she needed Fleming's confirmation, which she never received.

Contrary to Plaintiff's argument, the course of negotiations demonstrates that express authority had to be obtained from Fleming for each and every offer and that Moreland failed to obtain that authority for the final $100,000 offer she made in Fleming's absence at the Mediation.

Respectfully Submitted,

**O'Riordan Law Firm**

*/s/ John F. O'Riordan*
John F. O'Riordan, Esquire
ID # 59311
1845 Walnut Street
Suite 1100
Philadelphia, PA 19103
jfo@oriordanlaw.com
215.568.6864
Attorney for Defendants, Corecare Behavioral Health Management Inc. and Corecare Systems, Inc.